JS 44 (Rev. 12/07) (CAND Rev 1/10)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

LUIS RODRIGUEZ, individually and on behalf of all others similarly situated

## DEFENDANTS

Brian M. Nesmith, David W. Hanna, James A. Barth, James R. Tolonen, Keith Geeslin, Carol G. Mills (See Attachment for remaining Defendants)

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

Collier County, Florida

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Santa Clara County, California

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Alan R. Plutzik (077785) / Michael S. Strimling (96135)
Bramson, Plutzik, Mahler & Birkhaeuser, LLP
2125 Oak Grove Road, Suite 120
Walnut Creek, CA  94598 / Telephone (925-945-0200)

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1  U.S. Government Plaintiff
- [X] 3  Federal Question (U.S. Government Not a Party)
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                    and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury— | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Med. Malpractice | [ ] 625 Drug Related Seizure | 28 USC 157 | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | Liability | [ ] 365 Personal Injury — | of Property 21 USC 881 | | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & | Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 460 Deportation |
| & Enforcement of Judgment | Slander | [ ] 368 Asbestos Personal | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 470 Racketeer Influenced and |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Injury Product | [ ] 650 Airline Regs. | [ ] 830 Patent | Corrupt Organizations |
| [ ] 152 Recovery of Defaulted | Liability | Liability | [ ] 660 Occupational | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| Student Loans | [ ] 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | [ ] 490 Cable/Sat TV |
| (Excl. Veterans) | [ ] 345 Marine Product | [ ] 370 Other Fraud | [ ] 690 Other | | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment | Liability | [ ] 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | [X] 850 Securities/Commodities/ |
| of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 380 Other Personal | [ ] 710 Fair Labor Standards | [ ] 861 HIA (1395ff) | Exchange |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle | Property Damage | Act | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge |
| [ ] 190 Other Contract | Product Liability | [ ] 385 Property Damage | [ ] 720 Labor/Mgmt. Relations | [ ] 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal Injury | Product Liability | [ ] 730 Labor/Mgmt.Reporting | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| [ ] 196 Franchise | | | & Disclosure Act | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 740 Railway Labor Act | | [ ] 892 Economic Stabilization Act |
| | | | [ ] 790 Other Labor Litigation | | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate | [ ] 791 Empl. Ret. Inc. | **FEDERAL TAX SUITS** | [ ] 894 Energy Allocation Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | Sentence | Security Act | [ ] 870 Taxes (U.S. Plaintiff | [ ] 895 Freedom of Information |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ | **Habeas Corpus:** | | or Defendant) | Act |
| [ ] 240 Torts to Land | Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party | [ ] 900 Appeal of Fee |
| [ ] 245 Tort Product Liability | [ ] 444 Welfare | [ ] 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Determination |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities - | [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | Under Equal Access |
| | Employment | [ ] 550 Civil Rights | [ ] 463 Habeas Corpus – | | to Justice |
| | [ ] 446 Amer. w/Disabilities - | [ ] 555 Prison Condition | Alien Detainee | | [ ] 950 Constitutionality of |
| | Other | | [ ] 465 Other Immigration | | State Statutes |
| | [ ] 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Section 1332

Brief description of cause:
Breach of Fiduciary Duty

## VII. REQUESTED IN COMPLAINT:

- [X] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  [ ] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE
"NOTICE OF RELATED CASE".  Libri v. NeSmith, et al., (Case No. 3:11-cv-05338-RS)

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

[X] SAN FRANCISCO/OAKLAND   [ ] SAN JOSE   [ ] EUREKA

DATE
12/23/2011

SIGNATURE OF ATTORNEY OF RECORD

ATTACHMENT TO CIVIL COVER SHEET
Luis Rodriguez v. Brian M. Nesmith, et al.

Defendants:  continued

Gregory S. Clark, Blue Coat Systems, Inc., Thoma Bravo, LLC, Project Barbour Holdings corporation, and Project Barbour Merger Corp.

65252

1  BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
   Alan R. Plutzik (State Bar No. 77785)
2  Michael S. Strimling (State Bar No. 96135)
   2125 Oak Grove Road, Suite 120
3  Walnut Creek, CA  94598
   Telephone:  (925) 945-0200
4  Facsimile:  (925) 945-8792
   Email: aplutzik@bramsonplutzik.com
5  Email: mstrimling@bramsonplutzik.com

6  LEVI KORSINSKY LLP
   Joseph Levi
7  Eric M. Andersen
   30 Broad Street, 15th Floor
8  New York, New York 10004
   Telephone:  (646) 453-8908
9  Facsimile:  (212) 363-7171
   Email: jlevi@zlk.com
10 Email: eandersen@zlk.com

11

   Attorneys for Plaintiff
12

13                UNITED STATES DISTRICT COURT

14                NORTHERN DISTRICT OF CALIFORNIA

15 LUIS RODRIGUEZ, individually and on behalf )
   of all others similarly situated,           ) No.   **C11-06629**
16                                             )
                                               )                          JSC
17              Plaintiff,                     )
                                               )
18 v.                                          )   **CLASS ACTION COMPLAINT**
                                               )   **FOR BREACH OF FIDUCIARY DUTY**
19 BRIAN M. NESMITH, DAVID W. HANNA,           )
   JAMES A. BARTH, JAMES R. TOLONEN,           )
20 KEITH GEESLIN, CAROL G. MILLS,              )
   GREGORY S. CLARK, BLUE COAT                 )
21 SYSTEMS, INC.,  THOMA BRAVO, LLC,           )
   PROJECT BARBOUR HOLDINGS                    )
22 CORPORATION,   and PROJECT BARBOUR          )
   MERGER CORP.,                               )
23                                             )
                                               )
24              Defendants                     )

25

26

27

28

---

Plaintiff, by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

1.     Plaintiff brings this class action on behalf of the public stockholders of Blue Coat Systems, Inc. ("Blue Coat" or the "Company") against Blue Coat's Board of Directors (the "Board" or the "Individual Defendants") for their breaches of fiduciary duties arising out of their attempt to sell the Company to an investor group led by private equity investment firm Thoma Bravo, LLC ("Thoma Bravo") by means of an unfair process and for an unfair price.

2.     On December 9, 2011, Blue Coat and Thoma Bravo announced a definitive agreement under which Thoma Bravo, through its affiliates Project Barbour Holdings Corporation ("Project Barbour") and Project Barbour Merger Corp. ("Merger Sub"), will acquire all of the outstanding shares of Blue Coat for $25.81 per share in cash (the "Proposed Transaction"). The Proposed Transaction is valued at $1.3 billion.  The Board has breached their fiduciary duties by agreeing to the Proposed Transaction for grossly inadequate consideration. As described in more detail below, given Blue Coat's recent strong performance as well its future growth prospects, the consideration shareholders are to receive is inadequate and undervalues the Company.

3.     Defendants have exacerbated their breaches of fiduciary duty by agreeing to lock up the Proposed Transaction with deal protection devices that preclude other bidders from making a successful competing offer for the Company.  Specifically, pursuant to the merger agreement dated December 8, 2011 (the "Merger Agreement"), defendants agreed to:  (i) a strict no-solicitation provision that prevents the Company from soliciting other potential acquirers or even in continuing discussions and negotiations with potential acquirers; (ii) a provision that provides Thoma Bravo with three business days to match any competing proposal in the event one is made; and *(iii)* a provision that requires the Company to pay Thoma Bravo a termination fee of $39 million in order to enter into a transaction with a superior bidder.  These provisions substantially and improperly

1   limit the Board's ability to act with respect to investigating and pursuing superior proposals and

2   alternatives including a sale of all or part of Blue Coat.

3       4.      The Individual Defendants have breached their fiduciary duties of loyalty, due care,

4   independence, good faith and fair dealing, and Blue Coat, Thoma Bravo, Project Barbour, and

5   Merger Sub have aided and abetted such breaches by Blue Coat's officers and directors.  Plaintiff

6   seeks to enjoin the Proposed Transaction unless and/or until defendants cure their breaches of

7   fiduciary duty.

8

9                          **JURISDICTION AND VENUE**

10      5.      This Court has jurisdiction over the subject matter of this action pursuant to 28

11  U.S.C. § 1332 in that Plaintiff and Defendants are citizens of different states and countries and the

12  amount in controversy exceeds $75,000 exclusive of interest and costs. Plaintiff is a citizen of

13  Florida, and no defendant is a citizen of that country.

14      6.      This action is not a collusive one to confer jurisdiction on a court of the United

15  States which it would otherwise not have.

16      7.      Venue is proper in this district because nominal defendant Blue Coat maintains its

17  principal executive offices in the district and the defendants have conducted business and engaged

18  in numerous activities which have had an effect on this district.

19      8.      Venue is proper in this district because a substantial portion of the transactions and

20  wrongs alleged herein occurred in this district.

21                                    **PARTIES**

22      9.      Plaintiff is, and has been at all relevant times, the owner of shares of common stock

23  of Blue Coat. Plaintiff is a citizen of the state of Florida.

24

25

26

27

28

10.     Blue Coat is a corporation organized and existing under the laws of Delaware. Blue Coat has its principle executive offices located at 420 North Mary Avenue, Sunnyvale, California 94085. Blue Coat is a leading provider of Web security and WAN optimization solutions.

11.     Defendant Brian A. NeSmith ("NeSmith") is and has been a member of the Company's Board of Directors since March 1999. NeSmith previously served as the Company's President and Chief Executive Officer ("CEO") from March 1999 through August 2010, and also served as the Company's Chief Product Officer from September 2010 through May 2011. NeSmith is a resident of California.

12.     Defendant David W. Hanna ("Hanna") is and has been a director of Blue Coat since October 1996, and is and has been Chairman of the Board of Directors since February 2001. He also serves as Chairman of the Board of Director's Nominating/Corporate Governance Committee. He is the Chairman of the Board of Directors, CEO, and/or President of The Hanna Group, Hanna Capital Management, and Hanna Ventures LLC, a venture capital firm that lists Blue Coat as one of its portfolio companies. Hanna is a resident of California.

13.     Defendant James A. Barth ("Barth") is and has been a director of Blue Coat since January 2005, and he is also Chairman of the Board of Directors' Audit Committee and a member of the Board of Directors' Nominating/Governance Committee. Barth is a resident of California.

14.     Defendant James R. Tolonen ("Tolonen") has been a director of the Company since 2008, and he is also Chairman of the Board of Directors' Compensation Committee and a member of the Audit Committee. Tolonen is a resident of California.

15.     Defendant Keith Geeslin ("Geeslin") is and has been a director of Blue Coat since June 2006, and he is also a member of the Board of Directors' Compensation Committee and Audit Committee. He is employed as a partner at Francisco Partners Management LLC ("Francisco

Partners"), a private equity firm that lists Blue Coat as one of its portfolio companies.  Geeslin is a resident of California.

16.     Defendant Carol G. Mills ("Mills") is and has been a director of Blue Coat since January 2009.  Defendant Mills served as Interim CEO of the Company between August 16, 2011 and September 15, 2011.  Mills is a resident of California.

17.     Defendant Gregory S. Clark ("Clark") has served as Blue Coat's President, Chief Executive Officer, and a director since September 12, 2011. Clark is a resident of California.

18.     Defendants referenced in ¶¶ 11 through 17 are collectively referred to as Individual Defendants and/or the Board.

19.     Defendant Thoma Bravo is a private equity firm with a focus on software and technology businesses.  Thoma Bravo has offices in Chicago, Illinois and San Francisco, California.

20.     Defendant Project Barbour Holdings Corporation is a Delaware corporation and is a controlled affiliate of Thoma Bravo and that was created for the purposes of effectuating the Proposed Transaction.

21.     Defendant Project Barbour Merger Corp. is a Delaware corporation wholly owned by Project Barbour and is a controlled affiliate of Thomas Bravo that was created for the purposes of effectuating the Proposed Transaction.

## INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

22.     By reason of Individual Defendants' positions with the Company as officers and/or directors, they are in a fiduciary relationship with Plaintiff and the other public shareholders of Blue Coat and owe them, as well as the Company, a duty of care, loyalty, good faith, candor, and independence.

23.     Under Delaware law, where the directors of a publicly traded corporation undertake a transaction that will result in either a change in corporate control or a break up of the corporation's assets, the directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders, and if such transaction will result in a change of corporate control, the shareholders are entitled to receive a significant premium. To diligently comply with their fiduciary duties, the Individual Defendants may not take any action that:

(a)     adversely affects the value provided to the corporation's shareholders;

(b)     favors themselves or will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

(c)     adversely affects their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

(d)     will provide the Individual Defendants with preferential treatment at the expense of, or separate from, the public shareholders.

24.     In accordance with their duties of loyalty and good faith, the Individual Defendants are obligated to refrain from:

(a)     participating in any transaction where the Individual Defendants' loyalties are divided;

(b)     participating in any transaction where the Individual Defendants receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c)     unjustly enriching themselves at the expense or to the detriment of the public shareholders.

25.   Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, are knowingly or recklessly violating their fiduciary duties, including their duties of care, loyalty, good faith, candor, and independence owed to plaintiff and other public shareholders of Blue Coat.

## CLASS ACTION ALLEGATIONS

26.   Plaintiff brings this action on its own behalf and as a class action on behalf of all owners of Blue Coat common stock and their successors in interest, except Defendants and their affiliates (the "Class").

27.   This action is properly maintainable as a class action for the following reasons:

(a)   the Class is so numerous that joinder of all members is impracticable.  As of December 13, 2011, Blue Coat has approximately 42.80 million shares outstanding.

(b)   questions of law and fact are common to the Class, including, inter alia, the following:

(i)   Have the Individual Defendants breached their fiduciary duties of undivided loyalty, independence, or due care with respect to plaintiff and the other members of the Class in connection with the Proposed Transaction;

(ii)   Have the Individual Defendants breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of plaintiff and the other members of the Class in connection with the Proposed Transaction;

(iii)   Have the Individual Defendants breached any of their other fiduciary duties to plaintiff and the other members of the Class in connection

with the Proposed Transaction, including the duties of good faith, diligence, honesty and fair dealing;

(iv)    Have the Individual Defendants, in bad faith and for improper motives, impeded or erected barriers to discourage other strategic alternatives including offers from interested parties for the Company or its assets;

(v)    Whether plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

(vi)    Have Blue Coat, Thoma Bravo, Project Barbour, and Merger Sub aided and abetted the Individual Defendants' breaches of fiduciary duty; and

(vii)    Is the Class entitled to injunctive relief or damages as a result of defendants' wrongful conduct.

(c)    Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

(d)    Plaintiff's claims are typical of those of the other members of the Class.

(e)    Plaintiff has no interests that are adverse to the Class.

(f)    The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

(g)     Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h)     Plaintiff anticipates that there will be no difficulty in the management of this litigation.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy

## FURTHER SUBSTANTIVE ALLEGATIONS

28.     Blue Coat Systems is a leading provider of Web security and WAN optimization solutions.  Blue Coat offers solutions that provide the visibility, acceleration and security required to optimize and secure the flow of information to any user, on any network, anywhere. Blue Coat also offers service provider solutions for managed security and WAN optimization, as well as carrier-grade caching solutions to save on bandwidth and enhance the end-user Web experience.

29.     Earlier in 2011, Blue Coat common stock traded well above the Proposed Transaction price of $25.81 per share.  As can be seen in the chart below, Blue Coat common stock traded as high as $29.25 per share in May 2011 and as high as $32.33 per share in January 2011.

1
2
3
4
5
6
7
8
9
10
11
12



13      30.     The Company's stock price took a hit during the first two full quarters in 2011 as

14  the Company reported lower than expected results. On May 26, 2011, Blue Coat announced its

15  financial results for the quarter ending April 30, 2011. Total net revenue for the quarter was $120.7

16  million compared with net revenue of $122.9 million in the prior quarter.  The Company reported

17  net income for the quarter of $9.0 million compared with net income of $12.1 million, for the prior

18  quarter. In the press release announcing the financial results, the Company's then-CEO Michael J.

19  Borman ("Borman") commented on the Company's poor performance, stating: "I am not satisfied

20  with our revenue performance, as we did not deliver the top-line results that I believe we are

21  capable of.  While Blue Coat is well positioned in two great markets and possesses a strong and

22  competitive product portfolio, the company is in transition as we work to improve our revenue

23

24  performance."

25

26      31.     On August 16, 2011, Blue Coat announced its financial results for the quarter

27  ending July 31, 2011. The Company reported total net revenue for the quarter of $109.5 million

28

compared with net revenue of $120.7 million in the prior and $122.5 million in the same quarter of the prior year. The Company reported net income of $2.7 million for the quarter, compared with net income of $9.0 million in the prior quarter, and $13.9 million, for the same quarter in the prior year. "Our first quarter results were disappointing as they came in below our expectations," said defendant Hanna, the Company's Chairman of the Board. "We are taking the necessary actions to reinforce our leadership position in the Web security market, while capitalizing on opportunities in the WAN optimization market based on our strong competitive advantages." As a result of two poor quarters, the Company's stock price closed at $13.31 per share on August 17, 2011.

32.     In conjunction with the announcement of its financial results for the quarter ending July 31, 2011, Blue Coat also announced the appointment of defendant Gregory S. Clark as President and CEO of Blue Coat, effective September 15, 2011. Clark replaced Borman, who departed as Blue Coat's President and CEO. "Greg is a proven leader with a track record of driving growth and shareholder value," said David W. Hanna, Chairman of the Board of Blue Coat. "Greg has the right combination of technical depth, market insight and managerial skills to enable Blue Coat to capitalize on its strong franchise in Web security and WAN optimization."

33.     In the past few months, under Clark's leadership, Blue Coat has already seen significant improvement, and Clark has quickly positioned Blue Coat for tremendous growth. On November 17, 2011, the Company announced its financial results for the quarter ending October 31, 2011. The Company reported (a) net revenue of $114.1 million compared with net revenue of $109.5 million in the prior quarter; and (b) net income of $4.6 million compared with net income of $2.7 million in the prior quarter. "In the second quarter, we delivered better revenue results than we anticipated, which drove improved bottom line performance," said defendant Clark, in the press release announcing the financial results. "During the quarter we also made progress on refining our strategy and improving execution in specific areas of the company. Importantly, we implemented

initiatives to extend our leadership in Web security and to better leverage our differentiated WAN optimization capabilities."

34.   In a November 17, 2011 conference call, Clark commented on a number of achievement accomplished by the Company under his leadership that has positioned the Company for future growth. As stated by Clark in the conference call:

> Turning to some second quarter highlights. In Q2, Web Pulse, our cloud-based classification and anti-malware service, *reached a significant milestone* by serving 1 billion Web content inquiries in a single day. This volume of requests is indicative of the increasing use of our technology in the market and the significant impact our WebPulse service has on malware prevention. WebPulse also provides deep intelligence about web patterns, user behavior and malware ecosystems. As a result, we can effectively identify and block the malware that plagues all corporate users. For those of you familiar with our products, WebPulse is a service behind our WebFilter product in the appliance.
>
> *We also had some significant customer wins in the second quarter*. I have selected some examples that highlight the opportunities before us. In Q2, we closed a large deal with a leading global financial services firm that needed a more robust security solution for its consumer Internet banking sites. The customer purchased our security appliances replacement between the retail banking users and the service for its Internet site. This win is a great example of an Internet-to-corporate appliance deployment, or what is commonly called a reverse proxy, which enables secure access of internal corporate resources via the Internet. A reverse proxy deployment is an example of an underpenetrated use case of our appliances and represents an additional opportunity for us to sell our products.
>
> In the quarter, *we also saw good traction in our Blue Coat cloud security service*. In particular, there were 2 deals that stood out. First, a leading national electronics retail purchased an initial 35,000 seats of our cloud security service. This deployment provides Web protection for its corporate headquarters as well as for its 6,500 retail locations. We are seeing strong interest for our cloud security service from organizations with large numbers of remote locations such as in retail and education verticals. Second, an American-based manufacturing company purchased an initial 13,000 seats of our cloud security service along with their MACH5 appliances. MACH5 appliances provide remote location acceleration for its critical corporate applications, and by connecting the MACH5 appliances to our cloud security service, the customer is also able to secure Web access in its remote locations. This combination of our optimization and security solutions differentiate us from our competitors.

CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY                                               11
65249

These customer wins highlight Blue Coat's product leadership in its markets, and while there is more work ahead, we're capitalizing on the company's strengths and addressing its key challenges. ***Progress is well underway and we're beginning to see some results for improved execution.*** Now I'd like to turn to my view of the company.

***Many of the fundamentals for Blue Coat's future success are in place today. We are well-positioned in our 2 markets***. Blue Coat has an exceptionally strong brand and product portfolio in Web security and WAN optimization products that lead in addressing the unique acceleration requirements of the next-generation applications in rich media. I've always been impressed with Blue Coat's security appliances and see great potential in our hybrid strategy, which combines on-premise appliances with our cloud security service. This unique approach gives enterprise appliance customers the capability to extend the same level of protection to mobile workers and smaller branch officers where an appliance is not cost justified. And with our cloud security service, we now have the right vehicle to further penetrate in the global 10,000.

Blue Coat also has a highly differentiated WAN optimization product with performance capabilities that are aligned where I believe the market is headed. In particular, I believe we should win our fair share of deals for any quality of service, visibility, document caching, video, web or SaaS acceleration as a main driver of closing business. Blue Coat has some strong technical advantages in WAN Optimization, mainly the company's heritage in asymmetric optimization and object caching as well as the power of application and web content classification. This is impressive and hardened technology that allows us to uniquely prioritize and accelerate voice over IP, video, Web and SaaS application traffic. In addition, our policy management provides industry-leading visibility control over social networking, Web content and other issues facing our customers. These capabilities are well ahead of those of many of our competitors. In the longer term, these types of acceleration opportunities and application trends should drive the market's future direction and justify our continued focus in this investment. [Emphasis Added]

35.     Despite the Company's recent strong performance and positioning for growth, in a press release dated December 9, 2011, the Company announced that it had entered into a merger agreement to be acquired by an investor group led by Thoma Bravo for $25.81 per share in cash. The investor group, led by Thoma Bravo, includes the Ontario Teachers' Pension Plan through its private investor department, Teachers' Private Capital.

36.     The Proposed Transaction consideration is inadequate and undervalues the Company.

37.     Thoma Bravo is seeking to acquire at the most opportune time, at a time when the Company's stock price is still trading at depressed prices and at a huge discount to its intrinsic value as a result of the two poor quarters immediately preceding Clark's appointment.   With the Company beginning to improve and positioned for future growth, Blue Coat shareholders are being cashed out at the most inopportune time and at an unfair price.

38.     Meanwhile, Thoma Bravo will benefit tremendously by picking up Blue Coat on the cheap. "Blue Coat has strong, differentiated products for protecting enterprises from the ever increasing levels of Web-based security threats and for accelerating and optimizing applications and rich media content, such as video, over their networks," said defendant Clark. "Our partnership with Thoma Bravo will assist Blue Coat in more aggressively realizing the opportunities in its two markets, by providing a platform that enables greater focus on the business that supports the future growth of the company."

39.     "Blue Coat is an award-winning, global leader in next generation Web security and WAN optimization, and we welcome the opportunity to work with its existing management team," said Orlando Bravo, managing partner at Thoma Bravo. "As a private company, Blue Coat will be better positioned to innovate at an accelerated rate and achieve a higher level of growth."

40.     "Blue Coat marks the continuation of Thoma Bravo's investment efforts in the security technology industry, and is the firm's fifth security technology platform investment," said Seth Boro, partner at Thoma Bravo. "We are excited to partner with Blue Coat on strengthening its industry leadership position through product innovation, enhancing its world-class customer support and identifying organic and strategic growth opportunities."

41.     Further, according to Yahoo Finance, at least one analyst set a price target for Blue Coat common stock as high as $28.00 per share.

42.     Accordingly, the Proposed Transaction consideration is inadequate.

43.     In addition, certain directors and executive officers of the Company have interests in the Proposed Transaction that are not equally shared by the Company's public shareholders. For example, defendant Clark will remain with the Company following the consummation of the Proposed Transaction and will continue to lead Blue Coat. In addition, upon the consummation of the Proposed Transaction, all unvested in-the-money stock options and all restricted shares of Company common stock held by the Company's officers and directors will automatically vest and/or no longer be subject to restrictions and will be converted into a right to receive the Proposed Transaction consideration of $25.81 per share.

44.     Moreover, the Merger Agreement contains provisions relating to the indemnification of and insurance for the Company's directors and officers. Pursuant to the §7.03(a) of the Merger Agreement, Thoma Bravo has agreed for six years after the consummation of the Proposed Transaction to "indemnify and hold harmless the present and former officers, directors, employees and agents (including fiduciaries with respect to employee benefit plans) of the Company or any of its Subsidiaries" with respect to any "acts or omissions occurring at or prior to the" consummation of the Proposed Transaction "to the fullest extent permitted by Delaware Law or any other Applicable Law." This provision is particularly important as each of the Company's directors are currently defendants in shareholder derivative litigation actions that are currently pending in the United States District Court for the Northern District of California. The shareholder derivative litigation seeks to recover damages from the defendants in connection with their breaches of fiduciary duties and other violations of law resulting from alleged false and misleading statements that the defendants allowed the Company to disseminate. Accordingly, the directors

1    were incentivized to approve the Proposed Transaction to shield them from potential monetary

2    liability as a result of the derivative litigation.

3        45.    In addition, as part of the Merger Agreement, Defendants agreed to certain onerous

4
     and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction
5
     a *fait accompli* and ensure that no competing offers will emerge for the Company.
6
7        46.    §6.03(a) of the Merger Agreement includes a "no solicitation" provision barring the

8    Company from soliciting interest from other potential acquirers in order to  procure a price in

9    excess of the amount offered by Thoma Bravo.

10       47.    Pursuant to §6.03 of the Merger Agreement, should an unsolicited bidder submit a

11   competing proposal, the Company must notify Thoma Bravo of the bidder's identity and the terms

12
     of the bidder's offer.  Thereafter, should the Board determine that the unsolicited offer is superior,
13
     before the Company can terminate the Merger Agreement with Thoma Bravo in order to enter into
14
15   the competing proposal, it must grant Thoma Bravo three business days in which the Company

16   must negotiate in good faith with Thoma Bravo (if Thoma Bravo so desires) and allow Thoma

17   Bravo to amend the terms of the Merger Agreement to make a counter-offer so that the competing

18   bid ceases to constitute a superior proposal.  In other words, the Merger Agreement gives Thoma

19
     Bravo access to any rival bidder's information and allows Thoma Bravo a free right to top any
20
     superior offer simply by matching it.  Accordingly, no rival bidder is likely to emerge and act as a
21
22   stalking horse, because the Merger Agreement unfairly assures that any "auction" will favor

23   Thoma Bravo and piggy-back upon the due diligence of the foreclosed second bidder.

24       48.    The Merger Agreement also provides that a termination fee of $39 million must be

25   paid to Thoma Bravo by Blue Coat if the Company decides to pursue the competing offer, thereby

26   essentially requiring that the competing bidder agree to pay a naked premium for the right to

27   provide the shareholders with a superior offer.

28

49.     Ultimately, these preclusive deal protection provisions illegally restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.  The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.

50.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

### Breach of Fiduciary Duties
### (Against All Individual Defendants)

51.     Plaintiff repeats all previous allegations as if set forth in full herein.

52.     The Individual Defendants have knowingly and recklessly and in bad faith violated fiduciary duties of care, loyalty, good faith, and independence owed to the public shareholders of Blue Coat and have acted to put their personal interests ahead of the interests of Blue Coat shareholders.

53.     The Individual Defendants' recommendation of the Proposed Transaction will result in change of control of the Company which imposes heightened fiduciary responsibilities to maximize Blue Coat's value for the benefit of the stockholders and requires enhanced scrutiny by the Court.

54.     The Individual Defendants have breached their fiduciary duties of loyalty, good faith, and independence owed to the shareholders of Blue Coat because, among other reasons:

(a)     they failed to take steps to maximize the value of Blue Coat to its public shareholders and took steps to avoid competitive bidding;

(b)     they failed to properly value Blue Coat; and

(c)     they ignored or did not protect against the numerous conflicts of interest resulting from the directors' own interrelationships or connection with the Proposed Transaction.

55.     As a result of the Individual Defendants' breaches of their fiduciary duties, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Blue Coat's assets and will be prevented from benefiting from a value-maximizing transaction.

56.     Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the Class, and may consummate the Proposed Transaction, to the irreparable harm of the Class.

57.     Plaintiff and the Class have no adequate remedy at law.

## COUNT II

### Aiding and Abetting
### (Against Blue Coat, Thoma Bravo, Project Barbour and Merger Sub)

58.     Plaintiff repeats all previous allegations as if set forth in full herein.

59.     As alleged in more detail above, Defendants Blue Coat, Thoma Bravo, Project Barbour, and Merger Sub have aided and abetted the Individual Defendants' breaches of fiduciary duties.

60.     As a result, Plaintiff and the Class members are being harmed.

61.     Plaintiff and the Class have no adequate remedy at law.

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A)     declaring this action to be a class action and certifying Plaintiff as the Class representatives and his counsel as Class counsel;

(B)     enjoining, preliminarily and permanently, the Proposed Transaction;

1   (C)   in the event that the transaction is consummated prior to the entry of this

2   Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

3   (D)   directing that Defendants account to Plaintiff and the other members of the

4   Class for all damages caused by them and account for all profits and any special benefits obtained

5   as a result of their breaches of their fiduciary duties;

6

7   (E)   awarding Plaintiff the costs of this action, including a reasonable allowance

8   for the fees and expenses of Plaintiff's attorneys and experts; and

9   (F)   granting Plaintiff and the other members of the Class such further relief as

10   the Court deems just and proper.

11   Dated:  December 23, 2011          BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER LLP

12

13   By _____

14          Michael S. Strimling

15          Alan R. Plutzik (State Bar No. 77785)
           Michael S. Strimling (State Bar No. 96135)
16          2125 Oak Grove Road, Suite 120
           Walnut Creek, CA  94598
17          Telephone:  (925) 945-0200
           Facsimile:  (925) 945-8792
18          Email: aplutzik@bramsonplutzik.com
           Email:  mstrimling@bramsonplutzik.com

19          LEVI KORSINSKY LLP
20          Joseph Levi
           Eric  M. Andersen
21          30 Broad Street, 15th Floor
           New York, New York 10004
22          Telephone:  (646) 453-8908
           Facsimile: (212) 363-7171
23          Email:  jlevi@zlk.com
           Email:  eandersen@zlk.com
24
           Attorneys for Plaintiffs
25

26

27

28